**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Timothy Paul Olmos, | No. CV-19-08036-PCT-GMS (JFM) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Well Path, et al., | |
| Defendants. | |

Before the Court is Plaintiff Timothy Olmos's ("Plaintiff") Objection to Order Dated March 22, 2021.  (Doc. 171.)  Plaintiff objects to a pretrial Order by the Magistrate Judge.  For the following reasons, the Court affirms the Magistrate Judge's Order. (Doc. 156).

## BACKGROUND

On February 4, 2019, Plaintiff initiated this action while he was in the custody of the Arizona Department of Corrections.  (*See* Doc. 1.)  On screening Plaintiff's Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a due process claim and an equal protection claim in Counts One and Two, respectively, against former Arizona Department of Corrections Director Charles Ryan.  (Doc. 5 at 9.)  The Court also determined that Plaintiff stated an Eighth Amendment medical care claim in Count Three against contracted healthcare provider Well Path for its policy of providing only ibuprofen for post-operative pain management and against dentist Dr. Taylor, in his

1    individual capacity, for allegedly denying adequate post-operative pain medication.  (*Id.*)

2    The Court ordered these Defendants to answer the respective claims against them and

3    dismissed the remaining claims and Defendants.  (*Id.* at 10.)  After his release, Plaintiff

4    obtained leave from the Court, (Doc. 120,) and filed a First Amended Complaint, (Doc.

5    123) that added a state law claim to Count III.

6         The deadline for propounding discovery requests was January 4, 2021.  Two days

7    later, on January 6, Plaintiff filed a motion seeking both court-appointed counsel and a

8    court-appointed expert, (Doc. 140) and a motion seeking modification of the scheduling

9    order so that Plaintiff could propound and respond to discovery requests. (Doc. 142.)  After

10   full briefing, the Magistrate Judge denied Plaintiff's motions in a written order.  (Doc. 156.)

11   This Objection followed.

12                                   **DISCUSSION**

13   **I.     Standard of Review**

14        Under 28 U.S.C. § 636, federal magistrate judges may, on referral from the Court,

15   "hear and determine any pretrial matter pending before the court," except for certain

16   dispositive motions.[1]   28 U.S.C. § 636(b)(1)(A).  When a magistrate judge hears and

17   determines a nondispositive pretrial motion, their decision is subject to reconsideration by

18   the Court "where it has been shown that the . . . order is clearly erroneous or contrary to

19   law."  *Id.*; *see also Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656, 658 (9th Cir.

20   1993).  By contrast, magistrate judges may hear dispositive pretrial motions, but must

21   submit "proposed findings of fact and recommendations for the disposition," which the

22   Court, on objection of a party, reviews de novo.  28 U.S.C. § 636(b)(1)(B); Fed R. Civ. P.

23   72(b)(3).

24        Determining whether a motion is dispositive or nondispositive starts with the text

25   of Section 636(b)(1)(A), but it does not end there.  If a type of motion is explicitly listed in

26

27   _____

28   [1] Specifically excluded from that grant of authority are motions "for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information ..., to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can by granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A).

that section, it is dispositive.  Likewise, any motion "analogous to a motion listed" in that category is also dispositive.  *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1067 (9th Cir. 2004) (quoting *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747–48 (9th Cir. 1990)).  Any type of motion that does not fall within those two groupings is nondispositive and subject to review for clear error or for being contrary to law.

Here, none of Plaintiff's motions were dispositive.  "[C]ourts routinely deem orders denying appointment of counsel to be nondispositive . . . ."  *Jones v. Corr. Corp. of Am.*, No. CIV 10-2769-PHX-RCB (JRI), 2011 WL 1706838, at *4 (D. Ariz. May 5, 2011).  Likewise, discovery rulings are generally nondispositive because they do not dispose of an important claim of litigation right.  *See* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3068.2 (3d ed. 2021); *Cranford v. Underhill*, No. 06-cv-00111-LRH-GWF, 2007 WL 3256880, at *1 (D. Nev. Nov. 2, 2007) (treating motion for leave to reopen discovery as nondispositive); *Gamez v. Norris*, 609 F. App'x 455, 456 (9th Cir. 2015) (treating motion to appoint expert witness as nondispositive).  Therefore, the Court will review the Magistrate Judge's order under the clearly erroneous or contrary to law standard.  A court's finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "The 'contrary to law' standard, however, permits independent review of purely legal determinations by the magistrate judge."  *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000).

## II.    Analysis

### A.    Motion to Appoint Counsel

Plaintiff appeals the Magistrate Judge's denial of his request for counsel.  28 U.S.C. § 1915(e)[2] permits the court to "request an attorney to represent any person unable to afford counsel."  *Id.*  "The court may appoint counsel under section [1915(e)] only under

---

[2] This provision was formerly located at § 1915(d), which is referenced in some of the cited cases.  *See* 28 U.S.C. § 1915(d) (1994).

1    'exceptional circumstances.'" *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991)

2    (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).  "A finding of

3    exceptional circumstances requires an evaluation of both 'the likelihood of success on the

4    merits [and] the ability of the petitioner to articulate his claims pro se in light of the

5    complexity of the legal issues involved.'" *Wilborn*, 789 F.2d at 1331 (quoting *Weygandt*

6    *v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)).  "Neither of these factors is dispositive and

7    both must be viewed together before reaching a decision . . . ." *Id.*

8                    **1.      Likelihood of Success on the Merits**

9           Plaintiff's argument that the Magistrate Judge improperly scrutinized his likelihood

10   of success on the merits is not well taken.  (Doc. 171 at 19.)  His out-of-circuit authority is

11   incongruous with the Ninth Circuit's "exceptional circumstances" standard.  *See, e.g.*,

12   *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992) ("The appointment of counsel 'should

13   be given serious consideration . . . if the plaintiff has not alleged a frivolous or malicious

14   claim' and the pleadings state a prima facie case.").  *Rayes* is not the law in this circuit, and

15   inconsistent with the screening requirements of 28 U.S.C. § 1915A, which required the

16   Court to screen Plaintiff's complaint and dismiss any portions that were "frivolous,

17   malicious, or fail[ed] to state a claim . . . ."  28 U.S.C. § 1915A(b)(1).  Such a low bar

18   would suggest similarly situated plaintiffs would have a strong argument for obtaining

19   appointed counsel in any case that survives screening.  But the Ninth Circuit has explicitly

20   commanded that counsel should only be appointed in "exceptional circumstances."  *See*

21   *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  And while it is true that the *Byrd*

22   court did determine the plaintiff was entitled to counsel after reversing the district court's

23   Section 1915A dismissal, it also engaged in a searching analysis of the merits of the

24   plaintiff's complaint in doing so.  *See Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d

25   919, 922–25 (9th Cir. 2017).  Furthermore, *Byrd* did not consider the plaintiff's likelihood

26   of success in a vacuum.  It decided to appoint counsel after weighing the complexity of the

27   plaintiff's claims and his "limited ability to articulate his claims pro se" in addition to the

28   "possible merit of his claims."  *Id.* at 925.  That is consistent with what the Magistrate

- 4 -

1    Judge did here, where he viewed both factors "together before reaching a decision."

2    *Wilborn*, 789 F.2d at 1131.

3                          **a.**     **Count I**

4           Count I alleges that Defendants Ryan and Shinn took Plaintiff's property without

5    just compensation by complying with an Arizona law requiring certain deductions from

6    prison trust accounts. (Doc. 123 at 3); Ariz. Rev. Stat. § 31-254.  He also alleges that the

7    law violates due process because there is no pre- or post-deprivation review available under

8    the current procedures. (Doc. 123 at 3–4.)  As to Count I, Plaintiff seeks declaratory relief

9    and damages. (Doc. 123 at 18.)  However, as the Magistrate Judge noted, (Doc. 156 at

10   4-5), Plaintiff will be unable to prevail on this claim because of the Eleventh Amendment.

11   The Ninth Circuit has explicitly held that "the Eleventh Amendment bars reverse

12   condemnation actions brought in federal court against state officials in their official

13   capacities."[3]  *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008).

14   Insofar as Plaintiff invokes the *Ex parte Young* exception for prospective relief, the Ninth

15   Circuit squarely addressed this issue in *Seven Up*: "[R]everse condemnation actions cannot

16   qualify as claims for prospective relief, and *Ex parte Young* consequently does not apply."

17   *Id.*; *see also Suever v. Cornell*, 579 F.3d 1047, 1059 (9th Cir. 2009) (holding the same for

18   declaratory relief).  This Court is bound by the Ninth Circuit's holding in this case, and

19   Plaintiff will be unable to show likelihood of success on the merits as to Count I.

20                         **b.**     **Count II**

21          Plaintiff next argues that Defendants Ryan and Shinn violated his Equal Protection

22   rights because he was subjected to "unequal treatment in programming and living

23   conditions." (Doc. 123 at 5.)  He asks for declaratory relief. (Doc. 123 at 18.)  However,

24   "[a]n inmate's release from prison while his claims are pending generally will moot any

---

25   [3] Defendant Ryan is being sued in his personal capacity.  (Doc. 123 at 2 & n.3.)  Officers
26   sued in their personal capacity are shielded by the doctrine of qualified immunity.  *See
     Pena v. Gardner*, 976 F.2d 469, 472–73 (9th Cir. 1992).  Even if the Magistrate Judge erred
27   by failing to make an explicit qualified immunity finding in the underlying denial, that
     error is far from "clear" when both parties failed to address it in their briefs.  (Docs. 140,
     144, 145); *see also Wesbrock v. Ledford*, 464 F. Supp. 3d 1094, 1104 (D. Ariz. 2020)
28   ("Ninth Circuit law is not a model of clarity concerning which party has the burden of proof
     when the defense of qualified immunity has been raised."); (Doc. 47 at 2–3.)

claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). "The same is true for claims seeking declaratory relief." *Kotzev v. Ryan*, No. CV-10-0907-PHX-FJM, 2012 WL 1289847, at*2 (citing *Rhodes v. Stewart*, 488 U.S. 1, 2–4 (1988) (per curiam)). This is because the released inmate is "no longer subject to the prison conditions or policies he challenges." *Id.*

Here, Plaintiff was released from the Arizona Department of Corrections in August 2019. (Doc. 223 at 2.) He is no longer subject to the constitutional violation alleged, and his claims regarding prison policies are likely moot. For that reason, he will be unlikely to succeed on the merits as to Count II.

### c.    Count III

Plaintiff's final argument is that Defendants Well Path and Taylor failed to provide adequate medical care by refusing to prescribe opioids after a tooth extraction. (Doc. 123 12–13.) Plaintiff argues he is entitled to declaratory relief and damages for violation of the Eighth Amendment under § 1983 and a common law duty to serve. (Doc. 123 at 1, 16-17.)

### i.    Eighth Amendment

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* Instead, the Eighth Amendment requires the plaintiff to show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* To show a "serious medical need[ ]," the plaintiff must demonstrate that the "failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A prison official is deliberately indifferent . . . if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.

2004)).

Plaintiff argues that he should have been prescribed opioids after the tooth extraction because he placed Defendants Taylor and Well Path on notice of the standard of care and the prison guidelines. (Doc. 123 at 13.) Even if Defendants Taylor and Well Path breached the standard of care by failing to prescribe opioids, this alone is insufficient to establish an Eighth Amendment violation. Instead, Plaintiff must show that Defendant Taylor was aware of a risk of "unnecessary and wanton infliction of pain" and that his decision not to prescribe opioids was a "purposeful act or failure to respond to a prisoner's pain." *Jett*, 439 F.3d at 1096. It is uncontested that Defendants Taylor and Well Path never had the option to consider alternative pain therapies because Plaintiff never asked to see Defendant Taylor after the extraction. (Doc. 123 at 14–15.) Plaintiff points the Court to no evidence that Defendant Taylor was ever aware that Plaintiff was experiencing significant pain after the extraction that would have required an opioid prescription. Nor has Plaintiff shown that Defendant Taylor was on notice that an ibuprofen-only pain regimen following a prior oral surgery left Plaintiff in pain for two weeks. (Doc. 123 at 13.) Because Plaintiff has not proven such knowledge, it is unlikely that Defendants Taylor and Well Path could have purposefully acted in disregard of Plaintiff's pain. Plaintiff also acknowledges that the pain he suffered is "an outcome that is commonplace for this type of surgery." (Doc. 171 at 6.) Plaintiff is unlikely to succeed on the merits as to Count III.

### ii.    Common-Law Duty to Serve

Plaintiff next asserts that Defendants violated a common-law duty to provide adequate medical services; however, this Court could find no case in which this duty has been applied outside the public utility context, as the Magistrate Judge noted in his Order. (Doc. 156 at 6); *see, e.g., Travaini v. Maricopa Cnty.*, 9 Ariz. App. 228, 450 P.2d 1021 (1969); *TBD Tucson Grp. v. City of Tucson*, 228 Ariz. 120, 263 P.3d 669 (Ct. App. 2011); *Yuma Valley Land Co., LLC v. City of Yuma*, 227 Ariz. 228, 256 P.3d 625 (Ct. App. 2011); *Estate of Crain v. City of Williams*, 192 Ariz. 342, 965 P.2d 76 (Ct. App. 1998); *Cooke v.*

1    *Town of Colorado City*, 934 F. Supp. 2d 1097 (D. Ariz. 2013).[4]  In the absence of any such

2    caselaw, Plaintiff has failed to demonstrate that he is likely to succeed on the merits of this

3    common law claim.

4            **2.**      **Ability of Plaintiff to Articulate His Claims in Light of the Complexity of the Legal Issues Involved**

5           As noted by the Magistrate Judge, the constitutional claims in this case are "well

6    trod ground." (Doc. 156 at 6.)  A plethora of caselaw and other secondary sources exist as

7    to the law of takings, equal protection, due process, and deliberate indifference to serious

8    medical needs.    However, as noted above, lawsuits against the government and

9    government-related employees invokes a myriad of thorny issues, including sovereign

10   immunity, qualified immunity, and the limits of § 1983.  *See Agyeman v. Corr. Corp. of

11   Am.*, 390 F.3d 1101, 1103–04 (9th Cir. 2004).  However, the Court does not believe that

12   those issues make the case overly complex in light of Plaintiff's abilities.  The Court agrees

13   with the Magistrate Judge that Plaintiff is "a *peculiarly* able litigator." (Doc. 156 at 6.)  He

14   generally cites to the relevant legal standard and caselaw, and he has propounded a novel

15   legal theory on the common-law duty to serve.  That Plaintiff has submitted Notices of

16   Errata and has failed to glean relief in his past cases does not necessarily mean that he is

17   not a competent litigator.  Plenty of attorneys before this Court file Notices of Errata, and

18   plenty more ultimately fail to get relief.  Neither is reflective of the ability to litigate

19   effectively.  Notably, Plaintiff has prevailed in this very litigation: He has successfully

20   defeated Defendants' Motion for Summary Judgment for failure to exhaust administrative

21   remedies (Doc. 25), and has also successfully objected to the Magistrate Judge's Report

22   and Recommendation to deny his Motion to Amend Complaint.  (Doc. 102; Doc. 120.)

23   Therefore, the Court cannot say that the Magistrate Judge clearly erred in weighing this

24   factor against the appointment of counsel.  Because neither factor weighs in Plaintiff's

25   favor, the Court affirms the denial of appointment of counsel.

26

27   ─────────────────────
     [4] Plaintiff's common-law duty to serve claim may be more appropriately considered as a

28   claim for medical malpractice. *See* A.R.S. § 12-562.  However, since the Magistrate Judge considered the claim as one arising under the common law duty to serve, for the purposes of this Order reviewing the Magistrate Judge's decision the Court does the same.

**B.      Order to Show Cause Why Experts Should Not Be Appointed**

"Under Rule 706(a) of the Federal Rules of Evidence, the Court has discretion to appoint a neutral expert on its own motion or on the motion of a party." *McCoy v. Stronach*, 494 F. Supp. 3d 736, 740 (E.D. Cal. 2020).  But "Rule 706 does not contemplate court appointment and compensation of an expert witness as an advocate for Plaintiff." *Id.*; *see also Gorton v. Todd*, 793 F. Supp. 2d 1171 (E.D. Cal. 2011).  Nor does 28 U.S.C § 1915 "authorize federal courts to appoint or authorize payment for expert witnesses for prisoners or other indigent litigants." *Patton v. Loadholt*, 445 F. Supp. 3d 802, 803 (E.D. Cal. 2020) (quoting *Stakey v. Stander*, No. 1:09-cv-00094-BLW, 2011 WL 887563, at *3 n.1 (D. Idaho Mar. 10, 2011)).  Therefore, to the extent Plaintiff requests the Court appoint an expert witness to aid him in the preparation of his case, his request is improper, and the Magistrate Judge did not err.

Even if Plaintiff's motion is construed as a request for the Court to appoint a neutral expert to assist it in resolving issues pertinent to the case, the Magistrate Judge did not clearly err in denying his motion.  Courts determining whether to appoint an expert under Rule 706 consider several factors, including "whether (1) appointment of an expert will promote accurate factfinding; (2) testimony from the parties' experts is sufficient to reveal the facts; and (3) the claim raises constitutional concerns." *Carley v. Gentry*, 454 F. Supp. 3d 1006, 1008 (D. Nev. 2020).  Turning to the first factor, the Magistrate Judge determined that appointment of a neutral expert would not promote accurate fact finding.  (Doc. 156.) The Court agrees.  Since the "deliberate indifference component of the Eighth Amendment inquiry is subjective . . . . expert testimony is not required to determine whether Defendants acted with deliberate indifference." *O'Neill v. Bannister*, No. 3:12-cv-00030-LRH (WGC), 2012 WL 12542743, at *2 (D. Nev. Aug. 29, 2012); *accord Pruitt v. Ryan*, No. CV-13-02357-PHX-DJH (ESW), 2016 WL 1376444, at *4 (D. Ariz. Apr. 7, 2016) ("A trier-of-fact does not require a medical expert to determine whether Defendants were deliberately indifferent to Plaintiff's medical needs.").  Likewise, there is no indication that

1    an expert's testimony is required to evaluate Plaintiff's common law duty to serve claim.[5]

2    Additionally, it appears that Defendants have retained an expert witness.  Plaintiff remains

3    free to cross-examine the Defendants' expert.  Finally, it is undisputed that Plaintiff's

4    Eighth Amendment claim raises constitutional concerns.  But as discussed above, there is

5    no indication a neutral expert witness is needed at this time to help the Court evaluate the

6    merits of his claim.  The Magistrate Judge's decision is affirmed.

7            **C.    Request to Stay or Reopen Discovery**

8            The Magistrate Judge's decision denying Plaintiff's request to modify the Court's

9    scheduling order was not clearly erroneous.  Under Federal Rule of Civil Procedure 16,

10   scheduling orders may be modified—and discovery reopened—on a showing of "good

11   cause."  Fed. R. Civ. P. 16(b).  The focus of the good cause inquiry is on the "moving

12   party's reasons for seeking modification.  If that party was not diligent, the inquiry should

13   end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

14           The deadline for discovery requests in this case was extended several times, finally

15   to January 4, 2021.  (Doc. 137.)  On January 6, 2021, Plaintiff filed another motion for an

16   extension of time to complete discovery.  In it, Plaintiff argued that good cause existed

17   because (1) he was unable to file a motion for an extension of the discovery deadline on

18   January 4 because of unforeseen changes to his work schedule, (2) were the Court to

19   appoint counsel, they should be given the opportunity to conduct reasonable discovery, and

20   (3) he should be afforded the opportunity to conduct reasonable discovery.  (Doc. 142 at

21   1–2.)  However, none of these three reasons explain why he was unable to propound

22   discovery before the January 4 deadline.  In a subsequent filing in March 2021, Plaintiff

23   attached three draft documents relevant to his proposed discovery requests: (1) A half-

24   finished set of interrogatories, requests for production, and requests for admissions as to

25   Defendant Ryan that did not contain any actual discovery requests, (2) a numbered list of

26   eight discovery requests not presented in complete sentences or addressed to any party, and

27

28   _____

[5] If Plaintiff intended to plead a claim for medical malpractice under Arizona law, he would have been required to comply with the provisions of A.R.S. § 12-2603. *See Gorney v. Meaney*, 214 Ariz. 226, 228, 150 P.3d 799, 801 (Ct. App. 2007).

(3) a draft set of interrogatories, requests for production, and requests for admissions to Defendant Well Path.  (Doc. 157-1 at 15–24; Doc. 175-2 at 2.)  It is readily apparent that Plaintiff was nowhere near finished with his discovery by the January 4th deadline, and Plaintiff has not provided good cause for why that is.  While drafting discovery requests may take more time for a non-attorney than for a trained attorney, Plaintiff has had several extensions of time and was on notice that discovery would close on January 4th.  Based on the foregoing, the Magistrate Judge did not clearly err in determining Plaintiff was not diligent in attempting to meet the deadlines in this case.

**CONCLUSION**

For the foregoing reasons, the Court finds the Magistrate Judge's Order (Doc. 156) was neither clearly erroneous nor contrary to law.

**IT IS THEREFORE ORDERED** that Plaintiff's Objection to Order Dated March 22, 2021 (Doc. 171) is **DENIED.**

Dated this 26th day of October, 2021.

G. Murray Snow
Chief United States District Judge

- 11 -